Caleb Jon F. Vandenbos
WSBA # 50231
c/o Freedom Foundation
PO Box 552
Olympia, WA, 98507
CVandenbos@freedomfoundation.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON

## TACOMA DIVISION

| | |
|---|---|
| FREEDOM FOUNDATION, a Washington non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF WASHINGTON, WASHINGTON STATE DEPARTMENT OF LABOR & INDUSTRIES, a Washington government agency, and HEATHER NORMOYLE, in her official capacity,<br><br>Defendants. | No. 21-5928<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**[DEMAND FOR JURY TRIAL]** |

The WASHINGTON STATE DEPARTMENT OF LABOR & INDUSTRIES ("L&I" or the "Department") allows the Washington Federation of State Employees ("WFSE") labor union to recruit new employees to join the union, while these new employees are being paid and on state property. Even knowing WFSE disparages the FREEDOM FOUNDATION during these recruiting sessions, L&I refuses to permit the Foundation to present a countervailing viewpoint. This viewpoint discrimination violates the First Amendment.

## I.   PARTIES

1.   The Freedom Foundation is a nonprofit organization headquartered in Olympia, Washington, and operates under 26 U.S.C. §501(c)(3).

2.   The State of Washington is represented by its Attorney General.

3.   The Washington State Department of Labor and Industries is a Washington State governmental agency, headquartered in Tumwater, Washington, and is also represented by the Attorney General.

4.   Upon information and belief, Ms. Heather Normoyle is the Assistant Director of Human Resources for the Department. She is sued in her official capacity by way of this action at this time, though Plaintiff reserves the right to amend its complaint to conform to the facts adduced in discovery. At all times relevant hereto, Ms. Normoyle purported to be acting under color of law.

## II.   JURISDICTION AND VENUE

5.   The Court has subject matter jurisdiction based on 28 U.S.C. §§ 1331 and 1343(a)(3), because this case raises violations of Plaintiff's federal constitutional rights, and is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. §§ 2201 and 2202.

6. Venue in this Court is appropriate pursuant to 28 U.S.C. § 1391(b), and intra-district assignment to the Tacoma federal district court is proper under LCR 3(e)(1), because all relevant events occurred in Thurston County, Washington, and the parties are located there.

### III.   STATEMENT OF FACTS

7. This is a civil rights action for declaratory and injunctive relief seeking to vindicate constitutional rights guaranteed the Freedom Foundation. The Defendants are discriminating against the Foundation based on the content of protected speech and activity, which violates equal protection, and is viewpoint discrimination in violation of the First and Fourteenth Amendments to the United States Constitution.

8. By agreement, statute, and practice, Defendants are intentionally giving a platform to WFSE to speak to L&I employees during new employee orientation ("NEO") on the politically controversial topic of collectivization, so that WFSE can urge new employees to join their union, and demonize alternative points of view on joining the union, such as the Foundation's.

9. Defendants know that WFSE uses this platform to advocate for one-sided, pro-union views, solicits membership and financial support of those views, and repeatedly maligns opposing viewpoints—specifically those for which the Foundation advocates.

10. Meanwhile, Defendants have refused to allow the Foundation to present any countervailing viewpoint to employees. The Foundation made a reasonable request to present information about employees' First Amendment right to refrain from union membership and dues payment during the NEO process, but L&I, through Assistant Director of Human Resources Normoyle, refused.

11. Defendants continue to violate the Foundation's rights by maintaining an ongoing policy preventing the Foundation from speaking upon topics and expressing certain viewpoints,

while allowing advocacy and expression regarding favored subjects and from favored speakers, namely, WFSE.

12. Upon information and belief, Defendants have silenced the Foundation because they disapprove of its message, and are complicit with WFSE in providing a monopoly for only pro-union views and speech to be presented to public employees.

13. This is unlawful and deliberate viewpoint discrimination, repugnant to the First Amendment's purpose, to create a free and robust marketplace of ideas, as well as the Fourteenth Amendment's guarantee all receive Equal Protection under the law.

**A. Speech on Collectivization, or its Alternative, Involves Inherently Political Speech**

14. Compulsory membership and financial support of public sector unions implicates the First Amendment protection against compelled speech. *Harris v. Quinn*, 573 U.S. 616 (2014); *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448 (2018)

15. Even traditional public sector collective bargaining and "representational activities" are political speech.

16. In addition, unions ubiquitously engage in a broad range of political and social issue advocacy on "sensitive political topics… undoubtedly… of profound value and concern to the public;" these topics in turn occupy "the highest rung of the hierarchy of First Amendment values…." *Janus*, 138 S.Ct. at 2476 (internal citations and quotations omitted).

17. Anticipating *Janus*, the State agreed with WFSE to ensure that the union had an opportunity to "provide information about the Union" to new employees during NEOs, and modified its 2017-2019 CBA with WFSE to further enhance the union's role in the NEO process. Defendant State also amended the law to further enshrine this platform. *See* RCW 41.80.083, RCW 41.56.037

18. On information and belief, WFSE uses this forum to vigorously solicit union membership, pressuring employees to sign "irrevocable" forms authorizing the deduction of union dues from their paychecks by their employer, to attack and discredit perceived rivals like the Foundation, and otherwise to advocate for its views on matters relating to collectivization. It does not, of course, inform employees of their right to not support WFSE.

19. On information and belief, Defendants are entirely aware of the content of WFSE's speech to new (non-member) employees, and support it by creating a favorable environment, and forum, for WFSE's advocacy.

20. As acknowledged by *Janus*, this pro-union advocacy is First Amendment activity, whether or not the union is engaging in directly "representational activities." Even so, WFSE's purpose in speaking is to urge new employees to join the union and support its activities.

**B. The Freedom Foundation & Its Political Speech**

21. The Freedom Foundation, founded in 1991, has a mission to advance individual liberty, free enterprise, and limited, accountable government. Since 2014, the Foundation has been at the center of the clash between public employees' right to refrain from subsidizing union speech and the multi-billion-dollar workplace representation industry — which often receives State support -- on the other.

22. The Foundation dedicates considerable resources to informing public employees about unions' speech activities and their constitutional right to refrain from subsidizing such speech if they wish.

23. Nationally connected labor unions -- WFSE is AFSCME Council 28 -- have opposed the Foundation's efforts at every turn. Unions, including WFSE, have sponsored legislation, spent millions of dollars on initiative campaigns, worked with government agencies to

block access to what was formerly public information, filed lawsuits, and engaged in a variety of tactics to block and discredit the Foundation's work of informing employees of their rights.

**C. WFSE Uses Its Platform To Recruit New Members -- And Malign The Foundation**

24. On information and belief, and as detailed below, WFSE uses its thirty (30) minute platform during NEOs, with the State's agreement and pursuant to RCW 41.80.083 and RCW 41.56.037, to advocate pro-collectivization viewpoints, solicit financial support, and otherwise advocate for its position on the highly politicized topic of labor representation.

25. On information and belief, and as detailed below, L&I employees are present during WFSE's NEO presentations and are aware of how WFSE employees solicit membership and advocate for the union's viewpoints, and consistently disparage the Foundation to new employees.

26. The Foundation received a recording of a March, 2021, WFSE presentation during a virtually-conducted NEO for L&I employees, in which WFSE employee(s) engaged in such tactics.

27. On information and belief, during this NEO presentation to new L&I employees, and as part of his duties as the WFSE representative, Mr. Matthew Reiter advocated for new employees to join the union and sought to persuade these new employees to sign membership applications authorizing WFSE to have the State deduct dues from their paychecks, and maligned the Foundation.

28. Mr. Reiter:

   a. Described the Foundation as an association of "billionaires," dedicated to defunding state jobs and "getting access" to state employees' pensions through legislation;

    b. Stated that the "billionaire agenda" (and by extension the Foundation's) was to "go after" pensions, and suggested that anyone opposed to WFSE was motivated by greed;

    c. Advocated for WFSE membership by claiming that "unions are the only back-stop to preventing… a total take-over of our lives;"

    d. Claimed the Foundation currently was attempting to take employees' jobs, privatize L&I, limit state-provided medical benefits, and that L&I employees had a particularly strong stake in supporting WFSE so as to avoid this outcome;

    e. Suggested that the "billionaires" and the Freedom Foundation were advocating for a return to the "wild west" where the "free market reigns;"

    f. Characterized the employees as being in an "us versus them" struggle, with the employees and the union on one side, and the "billionaires" and the Freedom Foundation on the other;

    g. Described how the employees' jobs were "so tied to the State government" that it was essential to support union activities of lobbying and legislative advocacy; and

    h. Characterized L&I employees as in a struggle with "the union" on one side, and "dark forces aligned against us" on the other.

29. Mr. Reiter showed a PowerPoint slide to L&I employees titled "Wish List For State Employees" which (he claimed) was "taken straight from [the Freedom Foundation's] website." This "wish list" included: "Freeze All Hiring, Lay Off Employees, Cut Pensions, Raise Retirement Age, Freeze Health Plans, Reduce Benefits, Delay Raises, Raise Health Costs, Purge Departments, Privatize Jobs."

30. Mr. Reiter falsely told L&I new employees that the Foundation prioritizes these issues. The list in fact comes from a website funded at least in part by WFSE. This, in turn, was based (loosely) on a 2011 publication by the American Legislative Exchange Council, a separate entity. The document is attributed to two "managing editors" and eight "contributing authors," the only one of whom then-employed with the Foundation left in 2013. The document was published over ten years ago--three years prior to the Foundation developing its educational outreach program to public employees.

31. Mr. Reiter concluded this portion of his NEO presentation by soliciting WFSE membership from new employees by signing its membership application.

32. On information and belief, WFSE regularly and consistently conducts itself in these NEOs similarly to the way it did in March, 2021, and has a pattern and practice of doing the same.

33. On information and belief, WFSE's attack on the Foundation during the NEO is not unusual; WFSE regularly makes mention of the Freedom Foundation during its presentations.

34. Defendants are aware of WFSE's regular attacks on the Foundation during its NEO presentations.

35. On information and belief, Defendants condone or actively support WFSE's advocacy—either by their presence and silence at these meetings, or by facilitation of and active participation in these sessions.

**D.   The Freedom Foundation's Reasonable Request to Present Alternative Views**

36. Based upon concerns that new L&I employees were receiving a one-sided, State-sponsored perspective on these issues, on August 31, 2021, Foundation Director of Labor Policy Maxford Nelsen sent Mr. Joel Sacks, the Director of L&I, a letter requesting that the Department provide the Foundation with fifteen (15) minutes during L&I's NEOs "for the purpose of providing

employees with factual information regarding their First Amendment right to refrain from union membership and dues payment and to address the false claims leveled against [the Foundation] by WFSE organizers.

37. The Department, through Assistant Director Heather Normoyle, denied the Foundation's reasonable request on October 11, 2021, citing the agreement that the State had made with WFSE to give it a platform for its political speech during the NEOs, as well as the statutes Defendant State had passed.

38. On information and belief, Defendants are familiar with the Foundation and the nature of its advocacy. Specifically, they are aware that when Foundation staff engage with public employees, they present information about employees' First Amendment rights and factual information about union activities. This allows public employees knowingly to exercise their constitutional rights.

39. To date, Defendants continue to give WFSE a forum to engage in First Amendment activities and malign competing viewpoints during the NEO sessions for new L&I employees, while prohibiting the Foundation from presenting alternative information and opposing viewpoints.

40. Plaintiff demands a trial by jury upon all issues so triable.

41. The Foundation has incurred attorney's fees and costs in connection with the filing and prosecution of this lawsuit, and hereby requests to be made whole for same, pursuant to 42 U.S.C. § 1988.

## IV. CLAIMS FOR RELIEF

**FIRST CAUSE OF ACTION**
**Free Speech Violation,**
**Pursuant to 42 U.S.C. § 1983, against all Defendants**

42. The Foundation hereby re-alleges and incorporates by reference paragraphs 1-41 as if fully set forth herein.

43. Defendants here are liable under 42 U.S.C. § 1983. By their conduct, acting under color of law, Defendants have engaged in First Amendment viewpoint discrimination. They have done so by opening a forum for WFSE's discussion of labor issues during official L&I new employee orientation sessions, but refusing to allow the Foundation any forum to communicate an opposing message to these same L&I employees.

44. By giving WFSE a designated time slot within L&I's new employee orientations, Defendants have created a forum for ideologically motivated parties to present on public issues. Specifically, they gave WFSE a platform to present pro-union talking points and solicit union financial support. Because this is a value-laden, socio/political topic, the First Amendment prohibits the Defendants from putting their thumbs on the scales of this debate; the First Amendment forbids state actors from favoring one viewpoint over other viewpoints.

45. The Defendants' consciously opening a space for discussion on a politically charged topic, yet refusing to allow one side of that topic to present an opposing view, is just that: content-based and viewpoint-based discrimination seeking to provide a speech monopoly to WFSE.

46. Labor organization and issues of collectivization, as well as the ancillary issues that unions are prolifically involved in, are political in nature and value-laden speech protected by the

1   First Amendment. Defendants provided WFSE a platform and special protection to engage in this
2   speech with new employees.

3   47.   Likewise, the Foundation's expressive activities and outreach to public employees
4   is political speech at the apex of constitutional protection.

5   48.   By opening up a forum for the discussion of union support but refusing to allow
6   another side of the debate present, the Defendants, have significantly interfered with, and will
7   continue to significantly interfere with, the Foundation's fundamental rights to free speech and
8   association, in violation of the First Amendment of the federal constitution.

9   49.   Defendants may not be required to set aside resources and provide a forum for
10  ideologically motivated speakers to come and advocate at forums set for that purpose. But given
11  that Defendants have intentionally chosen to open up such a forum, they cannot discriminate based
12  upon the content of the speech or viewpoint of the speaker.

13  50.   This significant interference with the Foundation's fundamental right of free speech
14  is not reasonable, nor is it narrowly tailored to achieve a significant and/or compelling government
15  interest.

16  51.   Plaintiffs have incurred attorneys' fees in prosecuting this action, and are entitled
17  to recover same, in a reasonable amount, pursuant to 42 U.S.C. § 1988, and/or any other applicable
18  source of law.

**SECOND CAUSE OF ACTION**
**Equal Protection Violation**
**Pursuant to 42 U.S.C. § 1983, against All Defendants**

21  52.   The Foundation hereby re-alleges and incorporates by reference the above
22  paragraphs as if fully set forth herein.

53. The Fourteenth Amendment requires that similarly situated individuals receive the equal protection of the law.

54. Thus, the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution prohibits the Defendants from treating similarly situated groups differently based on their engaging in protected speech activities.

55. Defendants here are liable under 42 U.S.C. § 1983. By their conduct, engaged in under color of law, Defendants are depriving the Foundation of its federal constitutional right to equal protection under the Fourteenth Amendment.

56. The Foundation and WFSE are similarly situated because they both are ideologically motivated groups, comprised of individuals that engage in constitutionally protected political speech with new public employees concerning the purported benefits of public sector unionization, or lack thereof. This is speech directly related to politically charged issues relating to collectivization and union support versus independent, direct representation.

57. Defendants have provided a platform for one of these ideologically motivated parties to advocate for collectivization, while simultaneously squelching speech from the other side of the public debate.

58. WFSE's legal status as the collective bargaining representative does not provide a basis for the distinction Defendants are making between WFSE and the Foundation. This is because unions are by their very character political. This fact was recognized in *Janus*.

59. Even if WFSE limited its presentation to strictly explaining union benefits and/or contact information for shop stewards, *etc.* (and even if this could be considered an apolitical topic, contrary to *Janus*), WFSE has consistently and systematically used its platform to go beyond such limits, to advocate for pro-collectivization and disparage alternative views—with Defendant's

collective support and succor. This advocacy has been consistent, obvious, and approved by the Defendants collectively—by the State negotiating agreements and passing protective laws, by L&I representatives who are present at the presentations, and by Ms. Normoyle rejecting outright the Foundations' reasonable request.

60. The Defendants' differential treatment of the Foundation and WFSE divides along the content of their speech activity, and has a direct impact on that protected speech activity. The differentiation is not reasonable, nor narrowly tailored to achieve a significant and/or compelling government interest.

61. By opening up a forum for unions to advocate for collectivization and union support, and malign the Foundation, but refusing the Foundation to present countervailing views, Defendants, in concert, have significantly interfered with, and will continue to significantly interfere with, the Foundation's fundamental right of Equal Protection. Defendants are allowing similarly situated parties to engage in speech activity based not on any legitimate status difference, but based on the content and viewpoint of their speech. This violates the Equal Protection Clause of the Fourteenth Amendment.

62. Plaintiffs have incurred attorneys' fees in prosecuting this action, and are entitled to recover same, in a reasonable amount, pursuant to 42 U.S.C. § 1988, and/or any other applicable source of law.

**THIRD CAUSE OF ACTION**
**Declaratory & Injunctive Relief Pursuant to**
**28 U.S.C. §§ 2201 & 2202, against Defendant Normoyle**

63. The Foundation hereby re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

64. Based upon the foregoing allegations, there is presently existing between the parties hereto an actual, substantial, ongoing controversy that requires the Court's intervention. This request for a declaratory judgment is not seeking an advisory opinion from the Court.

65. 28 U.S.C. § 2201 provides, in relevant part, that

> In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

*See* 28 U.S.C. § 2201(a).

66. All of the parties necessary to resolve the present controversy are presently before the Court, and subject to its jurisdiction.

67. A declaratory judgment as requested below would resolve all disputes between the parties hereto, and provide redress to the Plaintiff for violation of its constitutional liberties.

68. Furthermore, 28 U.S.C. § 2202 provides that "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any party whose rights have been determined by such judgment."

69. Plaintiff has no adequate remedy at law to compensate for the loss of its fundamental, federal constitutional rights, and will suffer irreparable injury absent an injunction against the Defendants as requested herein. Time is of the essence with respect to Plaintiff's ability to exercise its First Amendment freedoms and engage in core political speech.

70. The harms alleged herein are ongoing and continuing in nature, as the Defendants continue to enshrine one side of this public debate with a forum, but denying the other, violating the Freedom Foundation's federal constitutional rights.

1    71.    The public interest favors the entry of injunctive relief, as do the equities in this
2    case, in order to protect the Foundation's and public employees' rights of free speech and free
3    association/assemblage, equal protection, and to maintain an open forum for robust public debate
4    and discussion.

5    72.    Among the various matters comprising the parties' dispute are:

6    a.    Whether the Defendants' rejection of Freedom Foundation's request to present
7          alternative views to L&I employees regarding union representation violates the
8          Foundation's right to equal protection, as secured by the Fourteenth Amendment to
9          the United States Constitution.

10   b.    Whether the Defendants' rejection of the Freedom Foundation's request to present
11         alternative views to L&I employees regarding union representation violates the
12         Foundation's right to free speech, as secured by the First Amendment to the United
13         States Constitution.

14   73.    Plaintiffs have incurred attorneys' fees in prosecuting this action, and are entitled
15   to recover same, in a reasonable amount, pursuant to 42 U.S.C. § 1988, and/or any other applicable
16   source of law.

## V.    RELIEF REQUESTED.

**WHEREFORE**, having set forth the claims for relief above, the Plaintiff, Freedom Foundation, respectfully prays for relief as follows:

74.    That the Court declare that the Defendants' rejection of Freedom Foundation's request to present alternative views to L&I employees regarding union representation constitutes a violation of the Foundation's right to free speech, as secured by the First Amendment to the United States Constitution.

75. That the Court declare that the Defendants' rejection of Freedom Foundation's request to present alternative views to L&I employees regarding union representation constitutes a violation of the Foundation's right to equal protection, as secured by the Fourteenth Amendment to the United States Constitution.

76. That the Court order injunctive relief: (i) requiring the Defendant Normoyle to permit the Freedom Foundation and/or its employees a fifteen (15) minute time period to present alternative views regarding labor representation to new L&I employees at new employee orientations immediately before or after WFSE presents its views; and (ii) prohibiting the Defendant Normoyle from treating the Freedom Foundation and/or its employees differently than similarly-situated speakers (including, but not limited to, WSFE/AFSCME Council 28 and other labor organizations);

77. That the Court order payment of reasonable attorneys' fees and costs to the Plaintiff, Freedom Foundation, in accordance with applicable law, including, but not limited to 42 U.S.C. § 1988;

78. That the Court order such other relief as is deemed equitable and just.

RESPECTFULLY SUBMITTED on December 21, 2021.

By: _/s/ CM rl_
CALEB JON F. VANDENBOS, WSBA # 50231
SYDNEY PHILLIPS, WSBA # 54295
PO Box 552
Olympia, WA 98507
PH: 360.956.3482
CVandenbos@freedomfoundation.com
*Counsel for Appellant*