THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FREEDOM FOUNDATION, a Washington non-profit corporation,<br><br>      Plaintiff,<br> v.<br>JOEL SACKS, *et al.*,<br><br>      Defendants. | CASE NO. C21-5928-JCC<br><br>ORDER |

This matter comes before the Court on Defendants' motion for summary judgment (Dkt. No. 29). Having thoroughly considered the parties' briefing, the relevant record, and taken oral argument under advisement, the Court hereby GRANTS Defendants' motion for the reasons explained below.

I.   **BACKGROUND**

  A.   **Parties to the Case**

Plaintiff is a nonprofit organization called "Freedom Foundation," with a self-proclaimed mission to "promote individual liberty, free enterprise, and limited, accountable government." (Dkt. No. 34 at 4.) The Foundation has a long history of advocating for labor reform in matters involving union membership and workplace representation. (*Id*. at 5.) According to its website, the Foundation's advocacy is intended to oppose "the entrenched power of left-wing union

government bosses who represent a permanent lobby for bigger government, higher taxes, and radical social agendas." (Dkt. No. 29 at 6.)

Defendant Joel Sacks is the Director of the Washington Department of Labor and Industries ("L&I"). (Dkt. No. 29 at 5.) Defendant Heather Normoyle is L&I's Assistant Director of Human Resources. (*Id*.) Both appear in this action in their official capacities. The Washington Federation of State Employees ("WFSE") is the designated exclusive collective bargaining representative of L&I employees. (*Id*.) This Court permitted the Washington State Labor Council ("WSLC"), a union organization that represents WFSE, to intervene as a Defendant in this action. (Dkt. No. 15.) Collectively, these parties are "the Defendants."

L&I conducts new employee orientation programs ("NEOs") twice a month. (Dkt. No. 29 at 7.) L&I, as a public employer, is required by state law to provide the exclusive bargaining representative, here WFSE, access to new employees. RCW 41.56.037(1)(a). The Collective Bargaining Agreement ("CBA"), negotiated between L&I and its employees, affirms this obligation and requires L&I to provide the union representative an opportunity to speak at NEOs. (Dkt. No. 31-1 at 15.) Pursuant to these legal and contractual obligations, L&I invites a WFSE representative to give a presentation at the bi-weekly NEOs. (*Id*.)

B.   **Events Leading to Dispute**

Freedom Foundation obtained a recording of an NEO held on March 24, 2021 ("the Recording"). (Dkt. No. 29 at 9.) During this particular NEO,[1] a WFSE representative gave an impassioned presentation in favor of union membership, in which the representative referenced and disparaged the Foundation by name. (*Id*.) On August 31, 2021, the Foundation wrote to Mr. Sacks requesting access to new employees at NEOs. (*Id*.) It sought this access to provide a counterbalance to the WFSE representative's views. (*Id*.) On October 11, 2021, L&I denied the Foundation's request on the grounds that NEOs are limited to information relevant to onboarding

---

[1] There is a purported factual dispute regarding the authenticity of the Recording. For reasons explained below, this is not a genuine dispute of fact. *See infra* Section II(B).

ORDER
C21-5928-JCC
PAGE - 2

new employees, and that L&I is legally and contractually obliged to give the WFSE representative access to new employees, whereas it is under no such obligation towards third-party organizations, like Freedom Foundation. (*Id*. at 9–10.) This action followed.

### C. Summary of the Claims

The Foundation seeks declaratory and injunctive relief on two grounds. First, that Defendants engaged in viewpoint discrimination—in violation of the First Amendment—by providing WFSE a forum that it refused for the Foundation. (Dkt. No. 17 at 10–12.) Second, that this denial also violates the Equal Protection Clause of the Fourteenth Amendment. (*Id*. at 12–13.) The Foundation asks the Court to order "Defendants to permit the Freedom Foundation and/or its employees a fifteen (15) minute time period to present alternative views regarding labor representation to new L&I employees at new employee orientations immediately before or after WFSE presents its views; and (ii) prohibiting the Defendants from treating the Freedom Foundation and/or its employees differently than similarly situated speakers." (*Id*. at 16.)

Defendants seek judgement as a matter of law. They argue the Foundation has not suffered First or Fourteenth Amendment injuries because (1) the forum at issue is a nonpublic one, and denial was reasonably related to the legitimate government interest of onboarding new public employees, and (2) WFSE has both a statutory and contractual right to attend NEOs, unlike Freedom Foundation. (*See generally* Dkt. No. 29.)

## II. DISCUSSION

### A. Legal Standard

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views facts in the light most favorable to the nonmoving party and resolves ambiguity in that party's favor, but it must not make credibility determinations or weigh evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 255 (1986); *Bator v. Hawaii*, 39 F.3d 1021, 1026 (9th Cir. 1994). A fact is material if it "might affect the outcome of the suit," and a dispute of fact is

genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The moving party has the initial burden to show the lack of a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that party succeeds, the burden shifts to the nonmoving party to demonstrate there is an issue for trial. *See id.* at 323–24. If the movant fails, the nonmovant need not present any evidence, even if it has the ultimate burden at trial. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000).

### B. Disputed Facts

The Foundation claims there is a factual dispute regarding the Recording because the Defendants deny certain aspects of the Recording in their answer to the amended complaint. (Dkt. No. 34 at 7–8.) As noted above, the Court views facts in the light most favorable to the nonmoving party and resolves ambiguity in that party's favor. *See Anderson*, 477 U.S. at 248–49. Moreover, the party opposing a summary judgement motion "may not rest upon the mere allegations or denials of [their] pleading," they must present evidence sufficient for a reasonable to return a verdict for that party. *Id.* at 248. Here, that means the Court accepts as true the Foundation's characterization of what occurred at the NEOs.

Despite this presumption in favor of the Foundation, they seek to create a factual dispute where none exists. To do so, they highlight a single statement in Defendants' summary judgement that characterizes the WFSE presentation in a manner the Foundation disagrees with. (Dkt. No. 34 at 11.) However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48 (emphasis in original).

The Foundation also asks the Court to deny the summary judgment motion because it is "premature," in light of ongoing discovery. (*Id.* at 4.) However, the Foundation continues to underappreciate that the Court already accepts their factual allegations as true. Therefore, the ongoing discovery—to further prove the authenticity and regulatory of the WFSE Recording—

will have no bearing on the Court's decision. Therefore, the Court finds that there is no genuine dispute of material fact, and this issue is ripe for judgement as a matter of law.

### C.  First Amendment Claim

#### 1. Forum Analysis

Assessing Freedom Foundation's First Amendment claim requires the Court to identify the nature of the forum, "because the extent to which the Government [L&I] may limit access depends on whether the forum is public or nonpublic." *See Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985). If the forum is public, L&I's speech exclusions must be "necessary to serve a compelling state interest and the exclusion [must be] narrowly drawn to achieve that interest." *Id*. at 800. If the forum is nonpublic, L&I can restrict speech "as long as the restrictions are 'reasonable and [are] not an effort to suppress expression merely because public officials oppose the speaker's view.'" *Id*. (quoting *Perry Educ. Assn. v Perry Loc. Educators' Assn.*, 460 U.S. 37, 45 (1983)). The Court also recognizes a third type of forum called a "limited public forum," which is "a type of nonpublic forum that the government intentionally has opened to certain groups or to certain topics." *DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.*, 196 F.3d 958, 965 (9th Cir. 1999). Speech restrictions in limited public forums are subject to the same standard as those in nonpublic forums—they must be viewpoint neutral and reasonable considering the purpose served by the forum. *Id.*

Here, the Court must consider L&I's practice of holding NEOs to determine the forum's nature. First, NEOs are not open to the public, they are limited to new L&I employees. (Dkt. No. 29 at 13.) Second, the presenters are not members of the public, they are L&I employees, L&I presenters, and WFSE representatives, who attend in their capacity as the exclusive bargaining representatives for L&I employees. (*Id*.) Third, prior to COVID-19, NEOs were not held in a public space, they occurred at L&I's learning Center in Tumwater, Washington, a government building. (*Id*.) Since then, NEOs have been conducted remotely, but are limited to invitations only. (*Id*. at 13–14.)

The Foundation posits that WFSE's political commentary changes the nature of a nonpublic forum into a public one. (Dkt. No. 34 at 21–22.) This argument is not well received—it effectively flips the analysis on its head. The nature of the forum drives the permissibility of speech regulations; the content of speech does not. L&I's practice and policies evidence a clear intent to create a nonpublic forum to onboard new employees. Therefore, its decision to exclude the Foundation from speaking at this forum is valid if the government interest is reasonable and viewpoint neutral. *See Cornelius*, 473 U.S. at 797 (1985).

        2.   Government Interest

L&I limits who speaks and attends NEOs in order to avoid unnecessary disruption, and to ensure that new employees are properly informed of their responsibilities and duties. (Dkt No. 29 at 15.) They invite presenters to help their employees navigate workplace "policies and procedures," which include learning how to "keep workplace conditions safe." (*Id*.) The end goal is to ensure the public workforce is "properly trained and educated," and that they have "important information about their new positions as public employees." (*Id*.) The decision to deny the Foundation's request is, therefore, reasonable. It is consistent with L&I's stated goals, and most importantly, viewpoint neutral.

Nonetheless, the Foundation alleges that L&I engaged in viewpoint discrimination because it "provide[d] a platform for ideological rhetoric and heated attack from one side of a topic of great public concern, but refuse[ed] to allow speech from the other side of that very same topic." (Dkt. No. 34 at 16.) This argument is both factually and legally unsupported. First, Freedom Foundation's viewpoint discrimination claim ignores the reasonable justifications L&I provides for allowing WFSE to present at NEOs. Namely, that NEOs are intended to onboard new employees, and WFSE is the legally recognized collective bargaining representative of L&I employees. (Dkt. No. 29 at 7.) This is a reasonable, viewpoint neutral, justification. Second, the Supreme Court dismissed an almost identical argument in *Perry*, where an exclusive bargaining representative was granted access to certain means of communication, while such access was

denied to a rival, unelected union. 460 U.S. 37, 48 (1983). The Court found that distinguishing between two entities based on legal status is a permissible distinction under the law. *Id.* Accordingly, the Foundation cannot plead viewpoint discrimination by simply holding a viewpoint that was not presented, or even opposed, at the NEO. If this argument were to be accepted, then L&I would have to host a seemingly infinite number of presenters to satisfy every possible opposing viewpoint on every conceivable topic. NEOs would unravel into an ideological blackhole, and L&I employees would never graduate from orientation to begin serving the community. The Court would never endorse such an outcome, and the law does not require it. *See Perry*, 460 U.S. at 48 (1983).

In short, L&I's decision to deny the Foundation access to NEOs, a nonpublic forum, is perfectly reasonable and within the bounds of what a new employee orientation is typically designed to accomplish.

Therefore, as a matter of law, the Court GRANTS summary judgment to Defendants on the Foundation's First Amendment claim.

### D. Equal Protection Claim

The Foundation's Equal Protection claim is based on similar facts and arguments to those alleged above: that L&I's decision to allow WFSE to speak at NEOs, but not Freedom Foundation, violates the Equal Protection Clause. The Equal Protection Clause is understood to require that all persons similarly situated be treated alike. *See Harrison v. Kernan*, 971 F.3d 1069, 1076 (9th Cir. 2020). If the Court determines that similarly situated individuals are treated differently, the Court will apply various levels of scrutiny based on the class or right implicated by the distinction. "Under traditional equal protection principles, classifications survive constitutional scrutiny so long as they bear a rational relationship to a legitimate state interest." *O'Connor v. Nevada*, 27 F.3d 357, 360 (9th Cir. 1994). When the Court applies rational basis review, a classification in a statute is given a strong presumption of validity. *Fed. Commc'ns Comm'ns v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314 (1993). The party challenging the statute

has the burden of negating "every conceivable basis which might support it." *Id.* at 315. However, if a challenged statute burdens a "suspect" class or a "fundamental" constitutional right, a court must apply a heightened level of scrutiny. *O'Connor*, 27 F.3d at 360.

The Foundation argues that its fundamental First Amendment right is implicated, but, as explained above, this argument is not tenable. Next, it argues it is similarly situated with WFSE because both "are advocates of labor issues . . . Their only difference is that they take opposite sides of the political debate." (Dkt. No. 34 at 21.) Even assuming the accuracy of this characterization, the Foundation cites no support for the argument that two groups are similarly situated simply because they advocate opposing views. Moreover, the two groups *are not* similarly situated. Freedom Foundation is a political advocacy group with no contractual or legal relationship with L&I employees. WFSE is the exclusive bargaining representative of L&I employees. (Dkt. Nos. 29 at 5; 34 at 4.) This alone rationally distinguishes the two groups and defeats the argument that L&I is treating similarly situated groups differently. *See Boardman v. Insell*, 978 F.3d 1092, 1118 (9th Cir. 2020).

Not only is there a logical relationship between treating WFSE different from Freedom foundation, but there is a legal one as well. WFSE is the exclusive bargaining representative for L&I employees. (Dkt. No. 29 at 15.) This means they have both a statutory and contractual right to have access to L&I employees. *Id*. Freedom Foundation was denied access, because unlike WFSE, it has no legal relationship with L&I employees. The Supreme Court has long condoned differential treatment based on legal status in a non-public forum. *See Perry*, 460 US at 50; *Boardman*, 978 F.3d 1092.

Freedom Foundation tries to sidestep this obvious distinction by alleging that WFSE exceeded the scope of its legal mandate by "engag[ing] in labor organization advocacy" and "trumpt[ing] ideological messages" and, therefore, Freedom Foundation has a right to intervene. (Dkt. No. 34 at 21–22.) This argument fails as a matter of law. First, and most importantly, Freedom Foundation cites no legal support for its assertion that the content of speech changes the

identity of the speaker, and the Court is not aware of any such legal support. The Court rejected this argument when styled as a First Amendment argument, and it rejects it when styled as an Equal Protection claim. *See, e.g.*, *Perry*, 460 U.S. at 54. Second, Freedom Foundation's characterization of the Recording is hyperbolic. The WFSE representative engaged in admittedly inflammatory rhetoric, but the topic clearly pertained to the scope of its mandate, which was to present information about its "exclusive bargaining representee to the new employee." RCW 41.56.037(1)(a). L&I employees have their own procedures to choose their collective bargaining representatives and the Court will not interfere in that process.

Therefore, as a matter of law, the Court GRANTS summary judgment to Defendants on the Foundation's Equal Protection claim.

## III.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgement (Dkt. No. 29) is GRANTED. Having found that the Defendants are entitled to judgement as a matter of law, the Court STRIKES Plaintiff's Motion to Compel Discovery (Dkt. No. 43), Intervenor-Defendant Washington State Labor Council's Motion for Protective Order (Dkt. No. 46), and the Plaintiff's Motion to Amend (Dkt. No. 54) as moot.

DATED this 17th day of January 2023.

John C. Coughenour
UNITED STATES DISTRICT JUDGE